IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN PANNEBAKER, | Civ. No. 1:21-CV-2168 |
| Plaintiff, | |
| v. | (Magistrate Judge Bloom) |
| KARIN TROTTA, et al., | |
| Defendants. | |

MEMORANDUM OPINION

I. Introduction

This case comes before us on a motion for summary judgment filed by the defendants, Karin Trotta, Eric Smith, and John Steinhart. (Doc. 69). The plaintiff, Steven Pannebaker, is an inmate incarcerated in the Pennsylvania Department of Corrections ("DOC") who filed this suit against the defendants, alleging violations of his constitutional rights. (Docs. 1, 18). Pannebaker contends that Trotta and Smith, two dentists at the State Correctional Institution at Mahanoy, and Steinhart, the Corrections Health Care Administrator ("CHCA"), violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs and delayed his dental treatment in 2020. (Doc. 18).

These defendants have now moved for summary judgment, arguing that there are no genuine disputes of material fact regarding these claims. (Doc. 69). After consideration, we agree and will grant the motion for summary judgment.

## II. Background

At all times relevant to his claims, Steven Pannebaker was incarcerated at SCI Mahanoy. In November of 2019, Pannebaker broke a tooth and submitted a request to be seen by the dental department. (Doc. 77-7 ¶¶ 2-4). While he was told that he would be placed on the schedule, Pannebaker was not seen by dental until January of 2020 after he submitted a sick call slip. (*Id.* ¶ 6).

On January 15, 2020, Pannebaker was examined by Karin Trotta, the dentist at SCI Mahanoy. (Doc. 70-10). Dr. Trotta stated in her deposition that she began employment with the DOC in November of 2019 but did not actually start at SCI Mahanoy until January of 2020. (Doc. 77-12 at 7). At the January 15 visit, Dr. Trotta took an x-ray of Pannebaker's tooth and noted that the tooth had decay but that he did not need any follow up. (Docs. 70-10, 70-11). She stated in her deposition that he did not present with pain at this visit. (Doc. 77-12 at 13).

However, according to Pannebaker, he believed Dr. Trotta was scheduling him to get his broken tooth fixed. (Doc. 77-7 ¶ 7). Pannebaker treated his mouth pain with over-the-counter pain medications. (*Id.* ¶ 8).

Despite alleging that he continued to be in immense pain from his tooth, Pannebaker did not submit another sick call request until April of 2020. (Doc. 70-12). Dr. Trotta saw him on April 29, 2020. (*Id.*). Notes from the visit indicate that Pannebaker complained that he broke another tooth and that he was eating a lot of hard candy. (*Id.*). Dr. Trotta's notes state that Pannebaker was experiencing intermittent symptoms and was asymptomatic that day, but that everything was visually intact. (*Id.*). These notes also indicate that Pannebaker was being treated for sinus and allergy symptoms. (*Id.*). Dr. Trotta stated in her deposition that at this time, the DOC's Covid-19 protocols prohibited them from doing x-rays or any procedures that required air filtration, as SCI Mahanoy did not have the appropriate filtration equipment, and further prohibited oral surgeons from coming to the facilities to perform procedures. (Doc. 77-12 at 12-14). In fact, Dr. David Hazlet, the DOC's Rule 30(b)(6) deponent, testified that only three DOC facilities—Phoenix,

Muncy, and Benner Township—had adequate filtration equipment to facilitate certain dental procedures in 2020. (Doc. 70-4 at 61-62).

On June 15, 2020, Pannebaker was seen by Dr. Trotta after he made an emergency request due to pain and swelling. (Doc. 70-13). By this time, the DOC had resumed x-rays, and Dr. Trotta took an x-ray that showed large low maxillary sinus. (*Id.*). She showed Pannebaker the x-ray, prescribed him penicillin and ibuprofen, and scheduled a follow-up visit for one week. (*Id.*). Pannebaker was seen by the medical department on June 24, 2020, at which time it was noted that his pain may be sinus-related as opposed to dental-related. (Doc. 70-16). A sinus x-ray was ordered, and the findings were unremarkable. (Doc. 70-17).

Pannebaker saw Dr. Eric Smith for the first time in July of 2020, at which time Pannebaker complained of bottom left tooth pain. (Doc. 70-18). After another x-ray, Dr. Smith noted slight facial swelling, gross decay, and a dental abscess, and further noted that the tooth was non-restorable. (*Id.*). He prescribed an antibiotic and ibuprofen and scheduled Pannebaker for a tooth extraction. (*Id.*). Pannebaker contends that the antibiotic prescribed by Dr. Smith was expired, and that this expired

4

medication made him sick.[1] (Doc. 77-7 ¶¶ 20-22). Pannebaker's tooth was taken out by a simple extraction on July 15, 2020. (Doc. 70-20).

About one week later, Pannebaker again presented to the dental department, this time complaining of top tooth pain. (Doc. 70-21). An x-ray showed gross decay, and Dr. Smith informed Pannebaker that he would need another tooth extracted. (*Id.*). Dr. Smith further noted that Pannebaker reported no significant pain to cold or percussion at that time. (*Id.*). Dr. Smith prescribed medications and advised Pannebaker to follow up if his symptoms continued or worsened. (*Id.*). Two days later on July 24, 2020, Pannebaker reported that he felt "much better" and that his "tooth no longer hurt[]." (Doc. 70-23). On August 6, 2020, Dr. Smith noted that Pannebaker was scheduled for an extraction, but they were "waiting for DOC to allow dental aerosols." (Doc. 70-24). At this visit, Pannebaker reported that his top tooth pain had subsided but complained of bottom tooth pain. (*Id.*).

---

[1] Pannebaker informed Defendant Steinhart, the Corrections Health Care Administrator, of the expired medication by way of an inmate request to staff member in August of 2020. (Doc. 70-32). Mr. Steinhart responded and thanked Pannebaker for informing him about the issue. (*Id.*).

One week later, Pannebaker reported no pain in his top teeth and that his other tooth pain had "settled down," and it was noted that he would be scheduled for his tooth extraction in two weeks after completion of the Covid isolation room. (Doc. 70-25). At a follow up visit with dental on August 27, 2020, Pannebaker was told that his extraction needed to be done by an oral surgeon due to the root structure, and that he would be transferred to SCI Phoenix for the extraction. (Doc. 70-26). Dr. Hazlet testified at his deposition that SCI Phoenix was one of the only DOC facilities at this time that had the proper air filtration system to perform dental procedures. (Doc. 70-4 at 61). Additionally, Dr. Trotta stated in her deposition that Pannebaker was one of the first inmates who was sent to SCI Phoenix for a dental procedure. (Doc. 77-12 at 13).

Pannebaker was ultimately transferred to SCI Phoenix, where his tooth was extracted on September 18, 2020. (Doc. 70-29). At a follow up appointment with Dr. Smith in October, Pannebaker complained that the surgeon left a part of the tooth in his mouth. (Doc. 70-30). However, Dr. Smith noted no retained root present, and that the extraction site was healing well, and advised Pannebaker to keep the area clean with proper hygiene. (*Id.*). In December of 2020, Pannebaker wrote to CHCA

Steinhart complaining that he was still having dental issues, although he did not describe any specific concerns that he had other than continued pain. (Doc. 70-33).

Pannebaker filed the instant action on December 29, 2021, and filed an amended complaint on March 25, 2022, which is currently the operative pleading. (Docs. 1, 18). In his amended complaint, Pannebaker asserts claims pursuant to 42 U.S.C. § 1983 against Trotta, Smith, and Steinhart, alleging that these defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Doc. 18). The defendants have now moved for summary judgment, arguing that there are no genuine issues of fact with respect to Pannebaker's claim against them, and further, that they are entitled to qualified immunity. (Doc. 69). This motion is fully briefed and ripe for resolution. (Docs. 70-71, 76-77, 80). After consideration, we will grant the defendants' motion for summary judgment.

III. Discussion

A. Motion for Summary Judgment – Standard of Review

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a)

7

provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

B. The Defendants' Motion for Summary Judgment will be Granted.

As we have noted, Pannebaker asserts his claims against the defendants pursuant to § 1983, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. For their part, the defendants assert that Pannebaker's claims against Dr. Trotta and Dr. Smith fail because the record establishes that Pannebaker was provided with significant dental care throughout the relevant period. They further assert that any delay in treatment was due to the Covid-19 pandemic and the protocols put in place by the DOC. Additionally, the defendants argue that because Pannebaker was receiving treatment from medical personnel, CHCA Steinhart—a non-medical prison administrator—cannot be found to be

deliberately indifferent. After consideration, we agree with the defendants, and we will grant summary judgment in their favor.[2]

The Eighth Amendment protects inmates from "cruel and unusual punishment." U.S. Const. amend. XIII. Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To be liable for an Eighth Amendment violation, prison officials must have "a sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, which, in the prison context, is one of "'deliberate indifference' to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted).

In the medical context, an inmate alleging an Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Accordingly, an inmate asserting a claim of deliberate indifference must establish that he had a serious medical need, and that

---

[2] Because we conclude that Pannebaker's Eighth Amendment claims fail on their merits, we decline to address the defendants' qualified immunity argument.

10

prison officials, by affirmative acts or omissions, were deliberately indifferent to that serious medical need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference in this context can be shown by a failure to provide care, the delay of medical care for non-medical reasons, or denial of reasonable requests for treatment. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). However, mere disagreement over a course of treatment does not amount to deliberate indifference. *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007). Further, non-medical correctional staff cannot be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Here, as to Drs. Trotta and Smith, we conclude that there are no genuine issues of material fact with respect to Pannebaker's Eighth Amendment claims against these defendants. Pannebaker contends that these defendants unnecessarily delayed his dental treatment when they failed to treat his dental pain and did not extract his teeth until July and September of 2020, despite his complaints of pain since November of 2019. At the outset, we note that although Pannebaker first requested to

11

see dental in November of 2019, the record indicates that Dr. Trotta did not begin seeing patients at SCI Mahanoy until January of 2020. Dr. Trotta ordered an x-ray in January of 2020 after seeing Pannebaker on sick call, but noted decay and that no follow up was necessary. While Pannebaker contends that he continued to be in pain and thought that he was being scheduled to have his tooth removed, the record indicates that Pannebaker did not complain of pain or request another sick call visit until April of 2020 when he broke another tooth, and was seen by Dr. Trotta. Dr. Trotta ordered more x-rays in June and prescribed antibiotics and pain medications.

    Thus, as to Dr. Trotta, the record is clear that she provided Pannebaker with treatment during the relevant time. While Pannebaker contends that this treatment was ineffective, particularly with respect to the prescription for ibuprofen, it is well settled that "disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation." *Monmouth Cnty. Corr. Institution Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *see Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (finding no deliberate indifference where an inmate was prescribed different medications than he requested). In

12

fact, the record does not indicate that Pannebaker ever requested any other type of medication other than what was prescribed.

Moreover, while Pannebaker claims that his tooth extraction was unnecessarily delayed, the record indicates that Dr. Trotta was not permitted to do anything more than treat his pain with medication, as the Covid protocols at that time prohibited x-rays and any dental procedure involving aerosols. Courts in this circuit have found that a delay in dental treatment due to Covid-19 mitigation measures is not the sort of delay in treatment for non-medical reasons that can amount to deliberate indifference. *See e.g.*, *Johnson v. Montag*, 2023 WL 5621355, at \*1 (W.D. Pa. Aug. 31, 2023) (finding "no error with the Magistrate Judge's finding that any delay in Plaintiff's dental treatment caused by the DOC's COVID-19 policy was neither arbitrary nor for a 'non-medical reason.'"); *Jones v. Sorbu*, 2021 WL 365853, at \*6 (E.D. Pa. Feb. 3, 2021) (denying preliminary injunctive relief on an Eighth Amendment claim where the plaintiff could not show a reasonable likelihood of success on the merits based on a delay in dental treatment due to Covid protocols). Accordingly, we conclude that as to Dr.Trotta, Pannebaker has failed to

establish a genuine issue of fact from which a jury could conclude Dr. Trotta was deliberately indifferent to his serious medical needs.

We reach a similar conclusion with respect to the claim against Dr. Smith. Pannebaker contends that Dr. Smith delayed his dental treatment and prescribed him expired medications that made him sick in violation of the Eighth Amendment. As we have explained with respect to Dr. Trotta above, the record is clear that Dr. Smith provided Pannebaker with dental treatment during the relevant time. Pannebaker first saw Dr. Smith on July 6, 2020, and Dr. Smith subsequently extracted Pannebaker's tooth by a simple extraction roughly one week later. When Pannebaker complained of new tooth pain later in July, Dr. Smith prescribed him ibuprofen and antibiotics, and after a few days, Pannebaker reported that he was feeling better. After Pannebaker continued to complain of pain in August, Dr. Smith referred him to an oral surgeon and had him transferred to SCI Phoenix to have his tooth extracted. During this time, Pannebaker had reported that his pain had subsided some. Accordingly, we cannot conclude that Dr. Smith was deliberately indifferent to Pannebaker's serious medical needs when the record establishes that Dr. Smith provided significant dental care to

14

Pannebaker during the relevant time, which included x-rays, roughly six dental visits, and a referral to an oral surgeon in the span of two months. This is particularly so where Pannebaker reported some improvement in his pain during this time.

Regarding his claim that Dr. Smith prescribed him expired medication that made him sick, we cannot conclude that this one instance amounts to deliberate indifference in violation of the Eighth Amendment. Rather, this claim amounts to, at most, medical negligence but does not suffice to show that Dr. Smith had a "sufficiently culpable state of mind" to amount to deliberate indifference in violation of the Eighth Amendment. *See e.g.*, *Positano v. Wetzel*, 529 F. App'x 116, 119 (3d Cir. 2013) (allegations that doctor prescribed the wrong medication may have risen to the level of medical malpractice but did not sufficiently allege a "culpable state of mind" for an Eighth Amendment violation); *Branch v. Dep't of Corrections*, 2021 WL 2682037, at *4 (M.D. Pa. June 30, 2021) (dismissing the plaintiff's Eighth Amendment claim where the plaintiff failed to allege "that he was intentionally provided with the wrong medication or that it was done with deliberate indifference[,]" finding

15

that the allegations amounted to, at most, medical malpractice or negligence). Accordingly, this claim fails as a matter of law.

Finally, as to Defendant Steinhart, we note that as the CHCA, Steinhart is a non-medical prison administrator. As we have explained, non-medical correctional defendants will not be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236. The Third Circuit has found that health care administrators are "undisputably administrators, not doctors[.]" *Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005). Accordingly, such non-medical defendants "cannot be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's request for more or different treatment." *Chambers v. Adams*, 2023 WL 9100640, at *4 (W.D. Pa. July 31, 2023) (quoting *Judge v. Medical Dep't at SCI Greene*, 2007 WL 1576400, at *4 (W.D. Pa. May 31, 2007)) (internal quotation marks omitted). Here, as we have explained, Pannebaker received dental care throughout 2020, although he disagrees with the level of care he was provided. Thus, because Pannebaker's only claim against Steinhart arises out of his

16

inmate requests to Steinhart regarding the dental care he was receiving, any Eighth Amendment claim against Steinhart fails as a matter of law.

Thus, we conclude that Pannebaker has failed to demonstrate a genuine issue of material fact with respect to his Eighth Amendment claims against these defendants. Accordingly, the defendants' motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 69) will be GRANTED.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge

Dated: May 8, 2024